# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DAVID ARY,

      Plaintiff

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security Administration,

      Defendant

Case No.: 3:20-cv-00104-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF Nos. 28, 34

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is pro se plaintiff David Ary's Motion for Reversal and/or Remand. (ECF Nos. 28, 29, 30) The Commissioner filed a Cross-Motion to Affirm and Opposition to Plaintiff's motion. (ECF Nos. 34, 35.) Plaintiff filed a response to the Commissioner's cross-motion. (ECF Nos. 40, 40-1 to 40-4.)

After a thorough review, it is recommended that Plaintiff's motion be denied and the Commissioner's cross-motion be granted.

## I. BACKGROUND

In January of 2016, Plaintiff completed an application for supplemental security income (SSI) under Title XVI of the Social Security Act. (Administrative Record (AR) 277-282.) The application was denied initially and on reconsideration. (AR 198-207.)

1  Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 208-210.)
2  ALJ Craig Denney held a hearing on September 4, 2018. (AR 114-154.) Plaintiff, who was
3  represented by counsel at the time, appeared and testified on his own behalf at the hearing.
4  Testimony was also taken from a vocational expert (VE). On November 30, 2018, the ALJ
5  issued a decision finding Plaintiff not disabled. (AR 68-80.) Plaintiff requested review, and the
6  Appeals Council denied the request, making the ALJ's decision the final decision of the
7  Commissioner. (AR 1-7.)

8  Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). He is
9  proceeding pro se in this action.

10  Plaintiff argues that the finding he could perform work at the light exertional level
11  underestimates his symptoms and functional capacity, and instead he can only perform work at
12  the sedentary level, which he claims results in a finding of disability under Medical Vocational
13  Rule 201.14. In addition, he contends that based on his combined medical and psychiatric
14  impairments, he is unable to maintain any particular posture for a sufficient length of time to
15  maintain concentration or to maintain the requirements of full-time employment. He further
16  contends that he requires additional breaks to alleviate his fatigue and would miss an
17  unacceptable number of workdays during the month which would make him unemployable.

18  **II. STANDARDS**

19  **A. Disability Process**

20  "The Social Security Administration (SSA) provides benefits to individuals who cannot
21  obtain work because of a physical or mental disability." *Biestek v. Berryhill,* 139 S.Ct. 1148,
22  1151-52 (2019). A claimant may apply for disability insurance benefits (DIB) under Title II of
23  the Social Security Act, and/or supplemental security income (SSI) benefits under Title XVI of

the Act. SSI benefits are based on need, and to be eligible a claimant must be "aged, blind or disabled" and have income and resources under certain thresholds. 42 U.S.C. § 1382(a). DIB are based on earnings, and the claimant must be disabled and have contributed to the insurance trust fund through deductions in wages. 42 U.S.C. § 401(b). DIB, unlike SSI, are limited to a certain period of insurance determined by the amount of the claimant's previously taxed earnings. 42 U.S.C. § 423(c)(1). Title 20 of the Code of Federal Regulations contains SSA's regulations. Those that start with 404 are Title II regulations. Those that start with 416 are Title XVI regulations.

After a claimant files an application for disability benefits, a disability examiner at the state Disability Determination agency, working with a doctor(s), makes the initial decision on the claimant's application. *See* 20 C.F.R. §§ 404.900(a)(1); 416.1400(a)(1). If the agency denies the claim initially, the claimant may request reconsideration of the denial, and the case is sent to a different disability examiner for a new decision. *See* 20 C.F.R. §§ 404.900(a)(2), 416.1400(a)(2). If the agency denies the claim on reconsideration, the claimant may request a hearing and the case is sent to an ALJ who works for the Social Security Administration. *See* 20 C.F.R. §§ 404.900(a)(3), 416.1400(a)(3). The ALJ issues a written decision after the hearing. *See* 20 C.F.R. § 404.900(a)(3). If the ALJ denies the claim, the claimant may request review by the Appeals Council. *See* 20 C.F.R. §§ 404.900(a)(4), 416.1400(a)(4). If the Appeals Council determines there is merit to the claim, it generally remands the case to the ALJ for a new hearing. If the Appeals Council denies review, the claimant can file an action in the United States District Court. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).

**B. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairment(s) are so severe as to preclude the claimant from doing not only his or her previous work but also, any other work which exists in the national economy, considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment(s) that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R.

§ 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitation(s), and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and  416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and

job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a VE or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

"The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted). For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id*.

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b),

§ 416.966(b). Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**C. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 522-23 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th

Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will

"review only the reasons provided by the ALJ in the disability determination and may not affirm

the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v.*

*Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since

January 4, 2016, his application date. (AR 70.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: chronic

heart failure-myocardial infarction (January 2015), coronary artery disease, chronic venous

insufficiency, obsessive compulsive disorder (OCD), depression, and anxiety. (AR 70.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the Listed Impairments.

(AR 71.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform light work, except

that he can sit, stand or walk for six hours in an eight-hour workday; he can frequently climb

ramps and stairs, balance, stoop, kneel, and crouch but never climb ladders and scaffolds; he can

occasionally crawl; he can perform work with no concentrated exposure to extreme heat,

concentrated exposure to moving mechanical parts, and concentrated exposure to unprotected

heights; he is able to understand, remember, and carry out simple routine and detailed tasks and

instructions; he can have occasional interaction with supervisors and coworkers; he can only

have occasional superficial interaction with the general public; and he can perform jobs with no

1   work involving fast-paced production and stringent quotas (controlled by conveyor belt or

2   assembly line). (AR 73.)

3          The ALJ then concluded Plaintiff did not have any past relevant work. (AR 78.)

4          At step five, the ALJ determined, based on VE testimony, that considering Plaintiff's age,

5   education, work experience and RFC, there were jobs that exist in significant numbers in the

6   national economy that Plaintiff could perform, including: routing clerk, marker, and

7   housekeeping cleaner. (AR 78-79.) As a result, the ALJ found Plaintiff not disabled from the

8   date of his application, January 4, 2016, through the date of the decision. (AR 79.)

9   **B. Ability to Perform a Range of Light Work**

10          The Plaintiff bears the burden of proving he is disabled *based on medical evidence*.

11   *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

12          Plaintiff has not done so in his motion. Instead, he asserts, without explanation or

13   evidentiary support, that the record contains lies. Plaintiff also asserts that pages are missing or

14   destroyed from his medical records without specifying which pages are missing or providing

15   evidence that records were destroyed. Plaintiff further claims, without citing any medical record,

16   that he is unable to execute *any* exertional activity whatsoever while experiencing low blood

17   pressure episodes. Plaintiff's medical records do not support this claim.

18          Plaintiff provides a record from Walid O. Shekim, M.D., from 1997, that includes a box

19   checked for attention deficit hyperactivity disorder (ADHD) (ECF No. 28 at 8), but there is no

20   support in the record that this constitutes a severe impairment. He also provides a letter from

21   Kambiz Alaei, Ph.D., who states that he has been treating Plaintiff since June 6, 2019, and

22   includes a list of Plaintiff's diagnoses, which includes ADHD, indicating that Dr. Alaei observed

23

1  and assessed this disorder. There is not evidence, however, that this was a severe impairment

2  during the period under consideration by the ALJ.

3          Plaintiff mentions a diagnosis of fibromyalgia, but the ALJ correctly noted that the

4  medical records do not support the presence of fibromyalgia as a medically determinable

5  impairment. (AR 70.)

6          Instead, the court finds that the medical records contain substantial evidence to support

7  the ALJ's RFC of a range of light work insofar as Plaintiff's exertional limitations are concerned.

8          In 2014, Plaintiff complained of chest pain but his EKG was normal, and it was

9  determined that his chest pain was likely related to anxiety. He also complained of difficulty

10 sleeping. (AR 801-02.) He was seen again in September of 2014, and said he was sleeping better

11 while taking Seroquel. (AR 798-99.)

12          In January of 2015, he was admitted to Saint Mary's Regional Medical Center with

13 complaints of chest pain. He was found to have an acute myocardial infarction and non-ST

14 elevation. He was admitted to the cardiac telemetry unit for further evaluation and treatment.

15 Post-catheterization he went into cardiogenic and septic shock. He was diagnosed with

16 aspirational pneumonia. His antibiotics were adjusted and he did well over the course of his stay.

17 He was discharged in stable condition. He was instructed not to engage in strenuous activity and

18 maintain a cardiac diet, and follow up with cardiology in two to three weeks and have an

19 echocardiogram in a month. (AR 714-16.)

20          He saw a cardiologist, Michael Newmark, M.D., the following month, and his

21 echocardiogram showed improvement in his ejection fraction to 50%. He had mild inferior

22 hypokinesis in the distal septum and was a little hypokinetic toward the apex, but his

23 anterolateral wall moved well. Dr. Newmark decided not to add anything to his regimen at that

point because his ejection fraction looked so good. Dr. Newmark questioned whether Plaintiff had ischemia of the anterior wall and requested a myocardial perfusion scan (stress test). (AR 944-946.) On May 29, 2015, Dr. Newmark noted that Plaintiff did not get the perfusion scan because of financial considerations. At that point, Plaintiff was having no chest pain or shortness of breath and said he would like to start exercising. From a cardiac standpoint, Dr. Newmark said Plaintiff was clinically stable and could start exercising again, but should stop if he experienced chest pain of significant shortness of breath. He was to return in four months and see how the exercise was going and schedule the perfusion scan. (AR 949-951.)

On October 1, 2015, he was still having no chest pain or shortness of breath. He was fighting with insurance about the perfusion scan. Dr. Newmark reiterated the need for the test. (AR 898-900.)

On August 11, 2016, Dr. Newmark said Plaintiff had the ability to get the stress test. (AR 921.) The stress test was performed on September 15, 2016. His baseline EKG showed a prior inferolateral infarct. His ST segments were normal. With exercise there was no ST segment depression noted and no symptoms. The test was negative for ischemia. It was a normal myocardial perfusion scan showing extensive infarction of the inferolateral wall. His blood pressure was initially low but then went up and he had no ST segment abnormalities. Though his ejection fraction was under 30%, he had a log of PVCs. His diagnoses were dyslipidemia and coronary artery disease. Dr. Newmark recommended Plaintiff come back for an echocardiogram. Plaintiff was advised he could start exercising and would be seen back in six weeks for the echocardiogram. (AR 871, 912-915.)

On November 15, 2016, his echocardiogram showed his systolic function was mildly depressed with an ejection fraction of 40 to 45 %, and he had hypokinesis of the distal septum

and apex. There was no evidence of pulmonary hypertension. He reported doing a lot of exercise, and one day after extremely heavy exercise he did notice a lot of skipped beats. Dr. Newmark felt his inferior wall was functioning normally. Dr. Newmark declined to make any changes in his regimen and advised Plaintiff if he felt a lot of skipped beats while exercising to make sure he had enough potassium. (AR 877, 895, 905-08.)

On June 14, 2017, Plaintiff brought his blood pressure and heart rate home records to his cardiology appointment showing they were at goal. It was reported he could walk 20 minutes without symptoms. He had no chest pain, shortness of breath, palpitations, dizziness of syncope. An echocardiogram was recommended and he was taking aspirin, Plavix, Lipitor and was to add metoprolol. (AR 974-75.) On December 11, 2017, his records still showed goal blood pressure and heart rate. He had good exercise capacity and could still walk 20 minutes without showing symptoms. He had no chest pain, shortness of breath, palpitations, dizziness of syncope. He said his main concerns were with his psychiatric issues. An echocardiogram in July of 2017 showed moderately depressed systolic function with an ejection fraction of 35% by visual estimation. He had global hypokinesis. He had a mildly dilated left ventricle and grade I diastolic function. A coronary angiogram was recommended due to the deterioration of systolic function, but Plaintiff said he was not interested in the invasive procedure and preferred conservative treatment. (AR 981-82.)

In January of 2018, Plaintiff complained of insomnia. It was noted that his cardiologist had switched his medication, which might be contributing to his insomnia. It was indicated that he was being seen for multiple psychological issues and they were attempting to help him with his sleep. (AR 104-107.) In July of 2018, he appeared tired. He was taking Ambien, Alprazolam, Seroquel and medical marijuana. The Seroquel dose was decreased due to daytime drowsiness. It

1 was noted that cutting back on tobacco may help his insomnia. He also reported consuming large

2 amounts of caffeine, but said that he would prefer to focus on one substance at a time. (AR 1014-

3 1015.)

4       He saw Richard Williams, M.D., on March 27, 2019, who noted that Plaintiff had been

5 told he had a chronic fatigue diagnosis. Dr. Williams said they would continue to monitor his

6 symptoms. (AR 90-93.)

7       The ALJ accurately summarized the medical evidence concerning Plaintiff's physical

8 impairments. (AR 74-76.) The ALJ concluded that Plaintiff's examinations did not fully support

9 his subjective allegations. The ALJ noted that Plaintiff testified he could lift 60 pounds and carry

10 it a short distance, but the ALJ adopted a much more restrictive RFC. (AR 76-77.)

11       In sum, the court finds the objective medical evidence is consistent with the range of light

12 work RFC assigned by the ALJ. Plaintiff had a serious medical event; however, the objective

13 findings do not align with Plaintiff's claim that he can only perform sedentary work.

14       The court will now turn to Plaintiff's mental health impairments.

15       Plaintiff's mental health treatment records reference diagnoses of depression, anxiety,

16 PTSD and OCD. Generally, his mental health records reflect that he had an anxious mood,

17 distorted perceptions and tangential thought process. He consistently reported issues with his

18 sleep schedule, and it was noted that his medications were often adjusted to address this problem.

19       Plaintiff underwent a consultative psychological evaluation on January 28, 2017, with

20 Paul Binks, Ph.D. Dr. Binks found Plaintiff was appropriately oriented to person, place, time and

21 circumstance; his attention and concentration were intact; he had good immediate, recent and

22 remote memory; he had a good fun of information; his intellectual ability was within normal

23 limits; his fine motor functioning was normal; his insight and judgment were fair. His affect was

rapidly shifting and his moot was irritable and anxious, but he was cordial and cooperative and made fleeting eye contact. His speech was fast, rambling and highly verbose. He was very focused on his health issues and it was hard to redirect him and have him stay on topic. He denied recent hallucinations. His thought process was mostly linear and logical, though his thought content would because unrelated to the discussion if allowed. He displayed some flight of ideas and possible obsessive preoccupation with health issues or a somatic symptom disorder.

Dr. Binks opined Plaintiff could understand and remember simple and detailed instructions; he could sustain attention for extended periods in two-hour segments for simple tasks; he could have occasional superficial contact with coworkers and supervisors and no contact with the public; he could adapt to a static work environment with infrequent changes and simple, routine and repetitive tasks, but could not be subject to fast paced production or stringent quotas. Dr. Binks felt that given Plaintiff's current cognitive and mood difficulties, he could have mild limitation in his ability to understand and remember detailed instructions; moderate limitation in his ability to sustain concentration, persistence and pace for detailed tasks; marked limitation in his ability to interact socially; and moderate limitation in his ability to adapt to routine stressors and changes in general work environment. Dr. Binks felt Plaintiff would have frequent periods of decompensation. (AR 964-969.)

Sherri Tomak, Psy.D., evaluated Plaintiff's application at the initial level. She opined Plaintiff had: no restrictions of activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence or pace; and no repeated episodes of decompensation, (AR 163.) She found Plaintiff moderately limited in the ability to carry out detailed instructions and maintain attention and concentration for extended periods, and to perform activities within a schedule, maintain regular attendance and be punctual,

1  and to complete a normal workweek without interruptions from psychologically based symptoms

2  and perform at a consistent pace without unreasonable number and length of rest periods. She

3  opined Plaintiff could carry out simple instructions, follow simple work-like procedures and

4  make simple work-related decisions. He had a fair ability to sustain attention throughout

5  extended periods of time and perform at a consistent pace. He was moderately limited in his

6  ability to interact appropriately with the public and to accept instructions and respond

7  appropriately to criticism from supervisors. (AR 167-168.)

8       Mark Berkowitz, Psy.D., evaluated Plaintiff's application on reconsideration. He opined

9  Plaintiff had the ability to understand and remember simple and detailed instructions; was

10 moderately limited in the ability to maintain attention and concentration for extended periods and

11 perform activities within a schedule, maintain regular attendance and be punctual; was

12 moderately limited in his ability to complete a workweek without interruption from

13 psychologically-based symptoms and perform at a consistent pace without an unreasonable

14 number and length of rest periods; was markedly limited in the ability to interact with the general

15 public; was moderately limited in the ability to accept instructions and respond appropriately to

16 criticism from supervisors and get along with coworkers or peers. Dr. Berkowitz stated that

17 Plaintiff could interact appropriately with supervisors and coworkers in non-intensive

18 encounters, and could interact appropriately with the public in brief, non-intensive encounters.

19 Plaintiff was moderately limited in the ability to respond appropriately to changes in the work

20 setting. Dr. Berkowitz explained that the objective findings and activities of daily living did not

21 suggest Plaintiff was precluded from all work. (AR 187-189.)

22      The ALJ assigned partial weight to the opinions of Dr. Binks. The ALJ found that the

23 assessment that Plaintiff could sustain attention for extended periods of two-hour segments for

15

simple tasks was unsupported by examination findings and Plaintiff's reported activities. The ALJ also found the limitations of no contact with the public to be overly restrictive and inconsistent with his reported ability to go out alone, shop in stores and go to appointments. (AR 77.) The ALJ also assigned partial weight to the opinions of state agency non-examining consultants, Drs. Tomak and Berkowitz. The ALJ found that the limitations related to social interaction and work consistent with simple routine tasks was consistent with the overall record, including Plaintiff's reported activities, his performance on a mental status exam, observations made by Dr. Binks, and the assessment provided by Dr. Binks. (AR 77.)

"Courts 'distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physician); and (3) those who neither examine nor treat the claimant (nonexamining physicians).'" *Garrison*, 759 F.3d at 1012 (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).

The Social Security Administration amended its regulations regarding the evaluation of medical evidence for claims filed on or after March 27, 2017, so that there is no longer a hierarchy for treating, examining or non-examining sources for those cases. *See* 20 C.F.R. § 404.1520c(a), 416.920c(a). This claim was filed before March 27, 2017; therefore, the new regulations are not applicable. For claims filed before March 27, 2017, 20 C.F.R. §§ 404.1527 and 416.927 govern how an ALJ must weigh medical evidence. Those regulations afford "treating sources" controlling weight in certain circumstances. *See also* Social Security Ruling

1   (SSR) 96-2p, 1996 WL 374188 (July 2, 1996).[1] Even when the treating sources are not given

2   controlling weight, they are still entitled to deference. *Id.*

3       The Ninth Circuit has similarly held that "[a]s a general rule, more weight should be

4   given to the opinion of a treating source than to the opinion of doctors who do not treat the

5   claimant." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks

6   omitted). "[T]he opinion of a treating physician is thus entitled to greater weight than that of an

7   examining physician, [and] the opinion of an examining physician is entitled to greater weight

8   than that of a non-examining physician." *Id.* (citation omitted). "If a treating physician's opinion

9   is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is

10  not inconsistent with the other substantial evidence in [the] case record, [it will be] given

11  controlling weight." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (citation and

12  quotation marks omitted); *see also Revels v. Berryhill*, 874 F.3d 648, 854 (9th Cir. 2017) (citing

13  20 C.F.R. § 404.1527(c)(2)). "The weight afforded a non-examining physician's testimony

14  depends on the degree to which [he or she] provide[s] supporting explanations for [his or her]

15  opinions." *Garrison*, 759 F.3d at 1012 (citation and quotation marks omitted).

16      "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must

17  state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r*

18  *of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). To reject a treating or

19  examining doctor's opinion that is contradicted by another doctor's opinion, the ALJ must

20

21

22
23  [1] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the
    Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, in the
    Ninth Circuit they are given deference "unless they are plainly erroneous or inconsistent with the
    Act or regulations." *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

1  "provid[e] specific and legitimate reasons that are supported by substantial evidence." *Garrison*,

2  759 F.3d at 1012 (citation and quotation marks omitted).

3       Here, the ALJ set forth legally sufficient reasons supported by substantial evidence for

4  rejecting portions of the opinions of the consultative examining and evaluating doctors

5  concerning Plaintiff's mental health limitations.

6       The ALJ concluded Plaintiff could understand, remember and carry out simple routine

7  and detailed tasks and instructions. This is consistent with the opinions of Dr. Binks and

8  Dr. Berkowitz. The ALJ found Plaintiff could have occasional interaction with supervisors and

9  coworkers and occasional superficial interaction with the general public. This is consistent with

10 the opinions of Dr. Tomak and Dr. Berkowitz. The court also agrees that this limitation is

11 consistent with Plaintiff's reports of going out to stores and doctors' appointments which

12 involved at least occasional superficial social interaction. In the healthcare setting, his providers

13 consistently noted that he was pleasant.

14      In sum, the court finds Plaintiff has not set forth a legally sufficient basis for reversal

15 and/or remand, and the Commissioner has demonstrated that substantial evidence support's the

16 ALJ's conclusion that Plaintiff was not disabled from the date of his application through the date

17 of the ALJ's decision.

18                    **IV. RECOMMENDATION**

19      IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING**

20 Plaintiff's motion for reversal and/or remand (ECF Nos. 28, 29, 30), and **GRANTING** the

21 Commissioner's cross-motion to affirm (ECF No. 34).

22      The parties should be aware of the following:

23

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: December 20, 2021

William G. Cobb
United States Magistrate Judge